Would the clerk call the first case please? 3-14-0251, People of the State of Illinois, Appellee, by Jasmine Morton v. Eric Pesina, Appellant, by Dimitri Golfus. Mr. Golfus, good morning. Good morning, Mr. Justice McDade. Good morning, Your Honors, and may it please the Court. Dimitri Golfus, Assistant Appellate Defender, on behalf of Eric Pesina, we defend the appellant. Now, as Mr. Pesina was convicted after a bench trial of two counts of predatory criminal sexual assault, the complainant in this case was Mr. Pesina's nephew, Jesus, who was 16 years old at the time of the trial. We've raised two issues on appeal. First, we argue that this Court should reverse Mr. Pesina's convictions and remand him for proceedings before a different judge, because the trial judge in this case, Judge Broad, prejudged Jesus' credibility and thus the guilt of Mr. Pesina long before the close of the evidence. This was a clear and obvious error that satisfies the second prong of the plainer doctrine. Second, we argue that this Court should either reduce Mr. Pesina's sentence or remand him for a new sentencing hearing, because Judge Broad abused his discretion by finding that Mr. Pesina had no redeeming value, despite the fact that there were several factors of mitigation that applied to him which the judge did not consider, and also because the judge relied on factors of aggravation for which there was no evidentiary evidence. Although all these issues merit Your Honor's attention, I'll be focusing my argument today on the issue of prejudgment. However, if the Court has any questions regarding the sentencing issue, I'd be happy to address them. Your Honors, the due process rights to a fair trial protects defendants in criminal cases against prejudgment. A judge at a bench trial should only resolve disputed issues of facts and issues of credibility after hearing all of the evidence. If the judge at a bench trial makes comments during the trial that reflect the preconceived attitude of the defendant's guilt before considering all of the evidence, the defendant is denied a fair trial. This includes circumstances where the judge reflects his attitude in comments by implication, which is what happened in this case. In this case, the complainant, Jesus, was the first witness to testify. He testified about how his uncle, Mr. Pesina, sexually assaulted him. When he was done testifying, Judge Broad told him the following, quote, Okay, young man, you are a very brave person and a very good person, and don't take any of this with you. That's some bad mark on you. Judge Broad's reference to any of this and the bad mark refers to the fact that Jesus had been sexually assaulted by his uncle and that he had suffered harm because of it. So you're thinking the reference to any of this is not to the proceedings but to the ultimate fact? Correct, Your Honor. In the context of this case, there's no other meaning that can be attributed to those words. The state in its brief doesn't dispute that that's what the judge was referring to. Even after trial, the comments made by the judge corroborate that this is what he meant by using those words. After the trial, he said that he was concerned during trial that he wasn't going to be paying attention to all of the evidence after Jesus' testimony because Jesus was totally credible and anyone who listened to his testimony would have been affected. He also said that after trial, he was concerned about whether Jesus would overcome the stain of being molested by his uncle. Of course, the use of the word stain is synonymous with a bad mark. If there's any doubt in Your Honor's mind as to whether... What was the context after trial when he was making these explanatory statements? The first regarding... one was during his factual findings of guilt and the other one came in the sentencing phase. The argument isn't that those in themselves show prejudgment. I'm not relying on those because those were made after trial. The prejudgment has to occur during trial. But I think we can look to the entire record and the entire context of what happened through trial and after trial to see was this prejudgment. And I think his statements after trial corroborate that. But again, if there's any doubt in Your Honor's mind as to whether... When it's after the trial, the sentencing phase, the judge only sentences people who are found guilty. Correct. So we're dealing with a person who was found guilty. Correct. Correct. We should ask ourselves this. I mean, you know, the presumption of innocence disappeared after you've been found guilty. That's correct. That's correct. I think we should ask ourselves this. This is an important point. Would Judge Broad have said what he said to Jesus if at the time he was thinking that it was possible that Jesus was falsely accusing his uncle of a Class X felony? Would he have called Jesus good and brave and told him going forward he shouldn't feel as if he had a bad mark on him if Judge Broad was entertaining the possibility that Jesus hadn't been molested, that Jesus was actually lying? And I think the answer to that question is no. He would not have made those statements. This isn't a case where we're just dealing with a judge comforting a nervous witness. His comments today just go beyond that. A judge doesn't tell a nervous witness, don't take any of this with you as some bad mark on you. That just doesn't make sense. Common sense tells us that there's more that motivates a judge to say that than just the fact that he has a nervous witness. Well, let's look and examine that cognitive decision-making process we all engage in, and you do too, I'm sure, when you read the brief. You read the brief and in a certain section you think, well, if this is to be believed, if there's nothing there to counter, my opinion is the case should either be decided or the merits go this way on the case. But that doesn't prevent you from going further and reading further in the brief or examining evidence and say, hmm, it doesn't appear the way I thought it was. So where in the decision-making process is a judge prohibited from assigning credibility and then later hearing other evidence and diminishing that assignment of credibility, maybe even in favor of the other position? So I guess what I'm saying is most of us do it substantially. But we do happen to have an oral statement here. Do we know where it is in the ultimate decision-making obligation of the judge? I mean, there was other evidence. You said this was the first bit of evidence, other than the charge, which is not evidence, obviously, that was presented at trial. Was there counter-revealing, counter-evidence presented subsequently? There was. And I recognize that whenever we see something we're reading in the brief or it's a judge who's hearing evidence or a juror that's hearing evidence, we make first impressions. Okay. And that's natural. What makes you think this isn't a first impression? What's important that we have to consider is people can make first impressions, but the finer fact has to keep an open mind throughout the trial. I'm saying what is there about this? You're asking the court or others to infer that there was not an open mind subsequently. Because the comments that Judge Broad made to Jesus necessarily implies that he found him credible. At that point. At that point. He told him, don't take any of this with you, it has some bad mark on you. That necessarily implies at that point that Judge Broad believes that that young man had been sexually assaulted by his uncle. At that point. But yet is there in the record any evidence that would suggest that it's not to be believed? I don't believe. But that wasn't the only evidence, was it? Just because you sit and you hear other evidence, just because you sit and you take notes, and even if you say after you've heard all the evidence I'm considering all these things, if you've prejudged credibility. That's a conclusion. Correct. But if you've made that prejudgment. Your consideration of all that other evidence is tainted. You may be thinking, I'm keeping an open mind, I'm considering this. But if you've come out and you've said, don't take any of this with some bad mark on you. You've already made up in your mind that you believe that young man has been sexually assaulted. Now you could be thinking, I'm keeping an open mind. But you're really not. You're viewing that remainder of the evidence with the mind. You see what I'm struggling with. I do. Prejudgment implies that there's nothing to sway that prejudgment. Okay. And what it seems to me is that when we say that it's an error to prejudge, it means that there is that prejudgment, that decision, is fixed in time and cannot be rebutted by any subsequent counter evidence. And we're dealing with, as you said, credibility. Is this person truthful in what events he or she is describing? And so, you know, ultimately a prejudgment probably is a fixed decision made upon reading the indictment or information, absent any subsequent proceedings or evidence. Do you agree with that? I don't agree with that, and I think the case law actually refutes that. If you look at the decision in Johnson, you have a case where the issue was whether or not the defendant fired the shotgun. And the defense position at trial was, no, I didn't fire the shotgun. And then the judge, in questioning another witness who was at the scene, came out and said, was that before or after the shotgun was fired? Now, I don't think that was a conclusion that the judge reached by reading the indictment. That was a conclusion that the judge reached by considering the testimony of those officers and then the testimony of the defendant. So I don't think prejudgment is limited to a judgment that you take into the trial that you've already made up your mind. I think that prejudgment can be developed during the course of the trial. If you listen to a witness, particularly the complainant, and if the entire case rests on the complainant's testimony and their credibility, which the state acknowledged in their closing argument, and you make comments reflecting that you believe that complainant, and you come out and say, don't take any of this with you, it's a bad mark on you, comments you're not going to make unless you think in your mind that that person has been sexually assaulted by their family member, that demonstrates prejudgment. You've made that decision before hearing the rest of the evidence, before hearing the remainder of the state's evidence, before hearing any of the defense's evidence, before hearing statements that the complainant made in his videotape at the child advocacy center, which, by the way, conflicted with his trial testimony. You've already made up your mind. You may be taking notes. You may be listening to the remainder of the testimony.  But you're viewing all that in the context of, I find this complainant credible. You're not keeping an open mind. Your mind's already made up at that point. Mr. Goldfuss, is your interpretation impacted at all by the statements that the court made in advising Mr. Pacino, is it Pacino? Yes. Not to take a bench trial? I think even if the judge did not make that statement, we still have prejudgment here. But I think that sheds light on the fact that the judge going into this trial recognized that he thought, when he knows things about what's going on in this case before a trial even starts, he's taking that in with him. He knows that he's listened to an officer testify at the preliminary hearing discussing what happened, and that's going to be sticking in his mind at the trial. In and of itself, does that show prejudgment? No. But I think that shows us where the judge's mindset is, that he can be influenced by these things when he's not supposed to be. So I think the error in this case, it's clear and obvious. It requires reversal because it satisfies the second prong of the plaintiff doctrine. It seriously affected the framework in which it's structured. It affected the framework of the trial going forward, and it's not the type of error that can be quantitatively assessed in the context of the evidence. The Fifth District in McDaniels has held that prejudgment satisfies the second prong of the plaintiff doctrine, and I think this error is akin to a trial before a biased judge, which is structural error. So I think for these reasons, the second prong of the plaintiff doctrine is satisfied for this court to bypass forfeiture principles. And unless Your Honors have any further questions, we would respectfully request that you reverse Mr. Pustina's convictions and remand him for a new trial before a new judge. Thank you. Thank you, Mr. Goldberg. Ms. Morton, good morning. Good morning. May it please the Court, Counsel, my name is Jasmine Morton. I represent the people in this case, and I'm arguing this brief on behalf of Laura DeMichael Bailon, who wrote the brief. She's currently on maternity leave. Now, it's the State's position that the trial judge's comments about the victim or towards the victim witness did not indicate that there was any prejudgment of that witness's credibility, nor did it indicate that somehow the defendant had been proven beyond reasonable doubt at that very moment. The remarks to that victim were meant to comfort that victim. To put it all in context, that victim witness had to be told twice to speak into the mic. It was clear to the judge that that witness was having a difficult time being in court testifying against his uncle and in front of strangers about a sexual assault that occurred numerous times between the ages of 11 and 12 years old. That witness had to be told to relax, get comfortable, please tell us your story, know that you're not in a bad place, we just want to hear what you have to say. Before the end of cross-examination, counsel said, do you find this embarrassing? And he said, yes. And at the end of that cross-examination, when the witness was about to be excused, the judge comforted him again, showing that I know you're embarrassed, but please don't consider this a bad mark on you. You told us your story, and we thank you. That is no indication that somehow the judge found the defendant guilty at that moment. Did the judge use those exact words? He told us your story. In his initial comforting statement, he did. He said, you're talking about things that are embarrassing, we know you feel badly, but you're not in a bad place, so feel comfortable, take a deep breath, relax, let's hear your story. Okay, just back to the words, your story. Yes. Okay. Yes. The initial statements made by the judge to the victim witness, the defendant or defense counsel found no issue with those statements and made no objection when the statement was made again to comfort that witness. Yeah, but we're here on plain air, so we don't care about that, do we? No, we don't care about that issue, but I think it's important to understand the context in which everyone in the courtroom was viewing this witness's testimony and the judge's statements. Now, addressing the victim witness wasn't inappropriate, and nothing of the statement indicates that there was prejudgment. The case was not closed. It was after a buildup or building blocks of evidence. The witness, the victim witness speaking, his father, his mother, all the testimony that went in that led to the defendant being found guilty. The defense counsel admits that telling a teen that they are good and brave in testifying is arguably an innocuous statement, and we agree with that. Once again, testing before a court of strangers and in front of your favorite uncle about something that is very embarrassing and terrible to happen to you is a scary thing, and I think that witness demonstrated how scary it was being before the court. Throughout the trial, this was the first witness that spoke, but throughout the trial the judge never rushed anyone, never made any comments that indicated that he was passing judgment too soon or early. He allowed the defense to have a continuance because a witness wasn't present on the first day of trial. When that witness became present, he then allowed that witness to testify and then the defendant to testify. Before closing arguments, he said, give me a moment, I want to go through my notes just to make sure I have things clear in my head before you guys start speaking. I think this judge took every single opportunity to ensure that he heard all the evidence, allowed the defense counsel to poke every hole he possibly could in the people's case, and allowed the state to prove their case beyond a reasonable doubt. He held us to that very, very high standard. I want to also talk about the Johnson case that counsel just referred to. The judge in that case did make a finding of fact, and before cross-examination of a witness, he said there will be a finding of guilty. Now, that's clear as day that there was some sort of prejudgment there before we were even proceeding forward with the case. It was the totality of the circumstances where the court found, yes, this was a prejudgment and there was an error and a fair trial was not given at that point. That's not what happened in this case. This was based on the circumstances, comfort, not prejudgment. Also, the reference to the bench trial comment. The judge was simply admonishing this defendant about his right to a jury trial, how important that is. You have 12 trials of facts. They've never seen any of the case before. They are completely unbiased, as is the judge, but he wanted to make it very clear that your right is an important one and I don't want you to give up that right lightly. And that's all that was in that circumstance. It doesn't highlight any bias by the judge. He worked extremely hard to ensure that this defendant received justice in this case. The evidence just happened to be quite overwhelming that he did, in fact, sexually assault numerous times his nephew. The judge went into great detail in the findings of fact. I'm sorry, Your Honor? The judge went into great detail when he was ruling about the findings of fact. Yes, Your Honor. Yes, he did. So in closing, we find that this trial judge's comments did not indicate prejudgment and we ask the Court, if there are no further questions, to affirm the defendant's conviction and sentence in this matter. Any other questions? Thank you, Ms. Newton. Thank you. Mr. Goldfuss, can you follow up? The State's position that this is just all about comfort and because this happened in the context of a judge comforting the witness, that makes it all okay. That's just not how it works. Again, this happened after he was done finishing his testimony, so everything that happened before that in terms of you need to speak up, you're soft-spoken, concerns about that was we're done, we're gone. Now, I'm not saying that it's inappropriate for a judge to comment a young witness after he's been testifying. That's fine, but what happened here went beyond that. And just because it's comforting, it doesn't mean that it can't be aired. And I think let's take a look at this a bit differently. I want to pose this hypothetical. Suppose the judge said something along the lines of, okay, young man, you did a good job testifying, you were very brave, and don't worry, I believe everything that you said. And going forward, don't worry, I'm going to take care of your uncle. You're not going to be seeing him anymore. Now, I think we can all agree that in those circumstances, the judge was comforting the witness. But I think we would all agree that that was also prejudgment. Now, just because in the hypothetical what happened was really, really explicit prejudgment, that doesn't necessarily mean that, well, if the prejudgment conclusion has to be made implicitly, that comforting somehow becomes okay. That's not how it works. The fact that the judge considers more testimony, so what? In McDaniels, Johnson, and Ojeda, cases I've cited in my brief, the court continued to hear more testimony, all the testimony that the parties want us to present, after he made the comments reflecting prejudgment. It doesn't matter that you consider more testimony. It doesn't matter that you go into it with your findings in great detail or that you're trying to be thorough. If you do that with an attitude that this important witness, this complainant, is believable, that affects your entire consideration of the remainder of the evidence. The state argues that I've admitted that comments to a witness can be innocuous, and they suggest that the comments here were innocuous. Again, you can have circumstances where a witness comes into court, they're nervous, they're scared, they're intimidated by their surroundings. They're before a judge, attorneys, and a whole bunch of people that they've never seen before, and all those people are focusing their attention on them. Understandably, you can be nervous. A lot of people are nervous when they testify. When the witness gets done testifying and they've overcome that fear, it makes sense to say, you did a good job, you were very brave. That's fine. That doesn't suggest that the judge believes you. But saying don't take any of this with you as some bad mark on you in the context of you just did it, you just overcame your fear of testifying, that doesn't make sense. As I said in my opening argument, there's something more going on that motivates the judge to say that. It's not just the fact that the witness was nervous. To convict, the judge would have to find that indeed this incident or incidents occurred, correct? Correct. And to convict the defendant, you'd have to find subsequently that not only did they occur, but they were the responsibility of or the actor, the criminal actor was the named defendant, right? Correct. And so is it possible, and I'm just asking this question, that at that point there was a belief from the testimony of the witness that indeed these events occurred? That is it still open as to whether they occurred as a result of this defendant being the actor? I don't think it's open at all. The only person that the complainant identified as the person who did it was his uncle, Mr. Cicino. So there's no way in your perspective or your argument that it could be parsed into each one of those elements? No. Finally, in Jackson, the state argues that, well, it was after these comments that indicated prejudgment were made that the court made an explicit finding of guilty. After that defense counsel said, well, Judge, I've got one more witness, and the judge said, okay, well, you can go ahead and put him on. The court found that that didn't matter. They weren't focused on the fact that the judge made an explicit finding of guilty. This is what they said, and I'll quote. This is from page 541 of the opinion. Quote, we are not in accord and believe that it is implicit from the reference to the discharge of a shotgun. The court assumed that the shotgun had, in fact, been fired and that the defendant was guilty of the offense. Right there, they're saying that's prejudgment. They go on to say the implication that the trial judge had reached a conclusion concerning defendant's guilt prior to the presumption, prior to the presentation of all the evidence was made more explicit, more explicit. They had already made the conclusion that there was prejudgment was already explicit. The fact that the judge made an explicit finding of guilt just made that conclusion more explicit. Okay. Counsel, that's one minute. The court would have reached that. The appellate court in Johnson would have reached the conclusion of prejudgment, regardless of whether the trial judge had said there was a finding of guilty before hearing the remainder of the evidence. And that's all I have. Unless you're honest with any further questions, we would, again, request that you reverse the defense conviction. Thank you. Thank you. We thank both of you for your endurance this morning. We'll take the matter under advisement and we'll issue a written decision as quickly as possible. The court will now stand in brief recess for appellate change.